IN THE UNITED STATES DISCTRICT COURT FOR THE
WESTERN DISTICT OF OKLAHOMA

| | |
|---|---|
| 1) CODY RAY KING, personally and as Next Friend of L.E.K. and L.R.K., minor children;<br>2) KELSIE KING, personally and as Next Friend of L.R.K., a minor child<br><br>        Plaintiffs.<br><br>vs.<br><br>3) THE STATE OF OKLAHOMA, ex rel, THE STATE OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, an Oklahoma Political subdivision;<br>4) SARA WARD, in her individual capacity;<br>5) MACHELLE ZIMMERMAN, in her individual capacity;<br>6) MELISSA PHILIPS, in her individual capacity;<br>7) JANE DOES 1 and 2, in their individual capacities, whose identities are not known to the Plaintiffs at this time;<br>8) THE STATE OF OKLAHOMA, ex rel, THE OKLAHOMA STATE BUREAU OF INVESTIGATIONS, an Oklahoma Political Subdivision;<br>9) TREVOR RIDGEWAY, in his individual capacity;<br><br>        Defendants. | Case No.   CIV-22-194-HE |

**COMPLAINT**

COMES NOW, Cody Ray King, personally and as Next Friend of L.E.K. and L.R.K., minor children, and Kelsie King, personally and as Next Friend of L.R.K., and for their cause of action against the above-named Defendants, upon information and belief, would state as follows:

**I. INTRODUCTION**

Plaintiffs bring this action for injunctive relief and for money damages pursuant to Title 42 of the United States Code, Sections 1983 and 1988 for the violation of rights secured by the Fourth and

Fourteenth Amendment to the United States Constitution. Plaintiffs also brings state law claims pursuant to *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013) for violations of the Oklahoma Constitution, and state law claims pursuant to the Oklahoma Governmental Tort Claims Act.

## II. PARTIES, JURISDICTION, VENUE

### A. PLAINTIFFS

1. Cody Ray King is an individual residing in Dewey County, Oklahoma. He is the father of L.E.K. and L.R.K., minor children residing in a Dewey County, Oklahoma.

2. Kelsie King is an individual residing in Dewey County, Oklahoma. She is the mother of L.R.K., a minor child residing in Dewey County, Oklahoma.

### B. DEFENDANTS

3. The State of Oklahoma ex rel the Department of Human Services ("OKDHS") is department or agency of the State of Oklahoma and operates throughout the State of Oklahoma, including Dewey County.

4. Defendant Sara Ward ("Ward") serves through her official capacity as the District Director over a specified area for Defendant OKDHS, which includes Dewey County. Upon information and belief, Ward is a resident and citizen of Oklahoma.

5. Defendant Machelle Zimmerman ("Zimmerman") serves through her official capacity as a caseworker for Defendant OKDHS in Dewey County, State of Oklahoma. Upon information and belief, Zimmerman is a resident and citizen of Oklahoma.

6. Mellissa Philips ("Philips") serves through her official capacity as a caseworker for Defendant OKDHS in Dewey County, State of Oklahoma. Upon information and belief, Philips is a resident and citizen of Oklahoma.

7. Upon information and belief, Defendant Jane Doe 1 ("Doe 1") serves through her official capacity as a caseworker for Defendant OKDHS in Dewey County, State of Oklahoma. Upon information and belief, Doe 1 is a resident and citizen of Oklahoma.

8. Upon information and belief, Defendant Jane Doe 2 ("Doe 2") serves through her official capacity as an investigator and/or forensic interviewer for Defendant OKDHS in Dewey County, State of Oklahoma. Upon information and belief, Doe 2 is a resident and citizen of Oklahoma.

9. The State of Oklahoma ex rel the Oklahoma State Bureau of Investigations ("OSBI") is department or agency of the State of Oklahoma and operates throughout the State of Oklahoma, including Dewey County.

10. Trevor Ridgeway ("Ridgeway") serves through his official capacity as a special agent for Defendant OSBI. Upon information and belief, Ridgeway is a resident and citizen of Oklahoma.

C. JURISDICTION & VENUE

11. The Court has jurisdiction over this action under 42 U.S.C §1983 because this is an action for deprivation of rights, privileges, and immunities secured by the United States Constitution. At all times relevant hereto, the Defendants were acting under color and authority of state law, and the events complained of herein occurred in Dewey County, Oklahoma, making jurisdiction and venue proper. Plaintiff has satisfied all prerequisites to filing.

III. STATEMENT OF FACTS

A. STRIP SEARCH, SEIZURE, AND INTERROGATION OF L.E.K

12. Plaintiffs incorporate the preceding paragraphs as if realleged.

13. On or about March 31, 2015, Ridgeway, an OSBI special agent, and Doe 1, an OKDHS employee, removed L.E.K. from his classroom in Seiling, Oklahoma, to interview him in

response to a referral made to OKDHS. Ridgeway was at the school to take physical custody of L.E.K at the request and direction of OKDHS.

14. Upon information and belief, OKDHS, Doe 1, and Ridgeway had no trustworthy or verified information, warrant, lawful reason, legal process, court order, affidavit or other paperwork that would authorize or justify the removal of L.E.K. from his classroom or the school.

15. Upon information and belief, and while still on school property, Ridgeway and/or Doe 1 took custody of L.E.K., and forcefully transported him to the bathroom of the school.

16. After forcing L.E.K. into the bathroom of the school, Ridgeway and/or Doe 1 forced L.E.K. to undress and stripped searched him.

17. Upon information and belief, and while still on school property and in the presence of employees of the School, L.E.K did not want to leave the school and did not want to be forced to ride with Ridgeway and/or Doe 1 right after being stripped search by him/her.

18. Upon information and belief, rather than transporting L.E.K. in a police car, Ridgeway and/or Doe 1 contacted L.E.K.'s grandmother and directed her to transport L.E.K. to the OKDHS department building in Woodward, Oklahoma.

19. Having no lawful authority to take custody of L.E.K. or to remove him from the school, and despite actual knowledge that L.E.K. did not want to leave school, Ridgeway and/or Doe 1 apprehended L.E.K., removed him from school, forcefully placed and/or caused him to be placed in L.E.K.'s grandmother's car against his will and without permission, and directed L.E.K.'s grandmother to transport L.E.K.

20. Upon information and belief, L.E.K. was transported to the Human Services Department in Woodward, Oklahoma, which is located approximately forty miles from the elementary school.

21. Upon information and belief, custody of L.E.K. was transferred to OKDHS at Human Services Department in Woodward, Oklahoma, where L.E.K. was subsequently interrogated by Doe 2 without the knowledge or permission of any caretaker.

22. Upon information and belief, L.E.K. was interrogated by Doe 2 about his father.

23. Prior to the apprehension and removal of L.E.K. from school, the Office of the Major County District Attorney's office had an ongoing criminal case against Cody King for a previous referral. However, the Major County District Attorney's Office was having difficulties building a case against Cody King—as evidence was non-existent to convict Cody King, which was later shown when the case was dismissed by the District Judge residing and expunged.

24. The agency responsible for the arrest and presentation of charges to the District Attorney's Office was the Defendant, OKDHS.

25. The failure to secure a conviction against Cody King brought great embarrassment to the District Attorney's Office and OKDHS.

26. Upon information and belief, the substantial embarrassment stemming from the failure to obtain a conviction caused OKDHS, Ward, Zimmerman, Philips, Doe 1, and Doe 2 to target Cody King and his family for retaliation in a vain effort to rehabilitate their own credibility and to further their own political and professional ambitions.

27. Upon information and belief, Defendants had actual knowledge that state law did not permit them to unilaterally take custody of L.E.K. under these circumstances, and despite that knowledge, Defendants used the School and L.E.K.'s grandmother to intentionally circumvent state law to seize L.E.K. without warrant or probable cause.

28. Upon information and belief, the use of law enforcement officials to seize and interrogate minor children to circumvent state law represents a routine and well-established practice of the Defendants.

29. Upon information and belief, OKDHS interrogated L.E.K. for approximately 30 minutes. During this atrocious and stressful interrogation, Doe 2 attempted to solicit information to either file criminal charges against Cody King, or to break apart his family, thus directly targeting the familial relationship.

30. Despite the efforts of Defendants to coerce information from a minor child, L.E.K. could not and did not provide OKDHS with information necessary to pursue Cody King, and consequently, L.E.K. was transported back to Seiling, Oklahoma.

31. L.E.K. was transported back to his mother, who immediately recognized a change in the behavior of L.E.K.

32. Thereafter, L.E.K. was returned to his father, Cody King, who immediately recognized a change in the behavior of L.E.K.

33. Since being strip searched, seized, and interrogated, L.E.K. continues to experience stress, trauma, and damages induced and caused by the OKDHS, Ridgeway, Doe 1, and Doe 2.

34. Indeed, for an extended period of time after the horrific incident, L.E.K.'s trauma caused him to fear authority figures, including police officers, caused incontinence because of the trauma and stress resulting therefrom, and caused L.E.K. to fear being alone, as he was afraid that someone would steal him again.

### B. CONTINUOUS HARASSMENT OF PLAINTIFFS

35. Plaintiffs incorporate the preceding paragraphs as if realleged.

36. Plaintiffs have been the subject of certain OKDHS referrals alleging threat of harm and abuse of a child dating back to 2011.

37. In 2012, OKDHS conducted an investigation that led to an internal finding of "substantiated" for a referral dealing with two minor children, known here by the initials B.H. and L.E.K.

38. Subsequently, the Major County District Attorney's office filed criminal charges relating to those referrals.

39. However, the Major County District Attorney's Office was having difficulties building a case against Cody King—as evidence was non-existent to convict Cody King.

40. During the pendency of the criminal proceedings, OKDHS received other referrals alleging the threat of harm and the abuse L.E.K., which resulted in a deprived case and a deprivation finding.

41. During the pendency of those proceedings, DHS received other referrals alleging the threat of harm and the abuse of L.R.K., which resulted in an impairment of Cody King's parental rights.

42. In 2019, the underlying criminal prosecution against Cody King was dismissed and totally expunged via the District Court of Major County, Oklahoma.

43. In 2019, the underlying deprived case for the minor child with initials L.E.K. was dismissed after an Order vacating the finding of deprivation of said child.

44. Kelsie King was threatened by Ward, Philips, and/or Zimmerman: If she did not stay away, and keep her kid away, from Cody King, then OKDHS was going to get her with failure to protect L.R.K. and take him away from her.

45. On October 3, 2020, Cody and Kelsie King were married in Dewey County, State of Oklahoma.

46. The following week, Philips, Ward, and/or Zimmerman initiated contact with Cody King regarding a new referral stemming from a Facebook post showing the marriage of Cody and Kelsie King.

47. On October 13, 2020, Cody King filed a Petition for expungement of Certain OKDHS Records pursuant to 10A O.S. § 1-6-102(E).

48. During these proceedings, Philips, Ward, and/or Zimmerman stated words to the effect that OKDHS will continue to hound Plaintiffs for the rest of their lives, regardless of the kind of referrals made, if any.

49. Philips, Ward, Zimmerman, and/or OKDHS continue to harass Plaintiffs; They continue their attempt to interrogate the minor children herein, notwithstanding an outstanding district court order enjoining OKDHS from interviewing the minor children without the court's permission.

50. The failure to secure a conviction against Cody King, the order vacating the deprived finding, and the injunction against interviewing the minor children herein has brought great embarrassment to Philips, Ward, Zimmerman, and OKDHS.

51. Upon information and belief, the substantial embarrassment stemming from the failure to obtain a conviction caused Philips, Ward, Zimmerman, and OKDHS to target Cody King and his family for retaliation in a vain effort to rehabilitate their own credibility and to further their own political and professional ambitions.

52. Multiple collaterals have been contacted by Philips, Ward, Zimmerman, Doe 1, and/or Doe 2, all of which have been clear: There is absolutely no issue with this family and their minor children; They have not witnessed, and have no reason to believe, that the minor children herein have been abused or that there is any threat of harm towards them.

53. Upon information and belief, while interviewing collaterals, rather than investigating the referral in a neutral manner, Philips, Ward, Zimmerman, Doe 1, and/or Doe 2, have told collaterals words to the effect that Cody King is not innocent, that he is a criminal and bad guy, and that his kids are in danger if in his care.

54. OKDHS has not taken any steps to stop the actions of Philips and Ward and Zimmerman, to correct the issues with their making false, derogatory, and harassing statements to

others, to correct any internal policies or problems with its employees threatening to take children away from parents if they do not disassociate themselves, or to exercise any meaningful supervisory authority. OKDHS and its supervisors were further aware that many OKDHS caseworkers and/or other employees in Dewey County and elsewhere in Oklahoma were inadequately educated and trained. Moreover, these Defendants did not establish effective training or oversight programs to prevent civil rights abuses by OKDHS employees.

55. The actions of Philips, Ward, Zimmerman, and OKDHS have caused Plaintiffs stress, trauma, and emotional suffering. Plaintiffs' reputation have been completely degraded and drug through the mud by Defendants' actions. Defendants' actions have inflicted grievous injuries upon Plaintiffs' body and mind, including but not limited to trauma, mental anguish, extreme emotional duress, pain and suffering, loss of quality of life and earning capacity, and loss of wages and property damage. Defendants' actions have, and continue to, put tremendous amounts of duress and stress upon Plaintiffs' familial association.

## IV. STATEMENT OF CLAIMS

### INJUNCTIVE RELIEF

56. Plaintiffs incorporate the preceding paragraphs as if realleged.

57. OKDHS has internal policies, procedures, and/or customs that violate the Federal Constitution.

58. When investigating "referrals" against one parent, OKDHS gives the other parent an ultimatum: Either leave the parent being investigated or they too will be investigated—even before any findings or evidence of abuse or risk of harm to children.

59. OKDHS has a well-established pattern of harassing families, and upon information and belief, causing divorces, anytime families attempt to enforce their rights. Essentially, if OKDHS loses, it is their policy, procedure, and/or custom to ruin the lives of those they loose to.

60. OKDHS's exceptionally low standard of proof to substantiate a referral leads to them "stacking" substantiated referral against individuals. Thus, if a referral has been substantiated against an individual, OKDHS will use that to find the individual a threat of harm in any subsequent referrals—even when the substantiated claim of abuse is unfounded in a Court of law, and when there is absolutely no proof of abuse in a subsequent referral.

61. This "stacking" causes a snowball effect, and OKDHS uses this to "keep an eye" or "keep their thumb" on and harass individuals, which is apparent in this case when OKDHS made its own referral to itself for abuse after seeing a Facebook post.

62. Plaintiffs, along with other similarly situated individuals whom OKDHS has their eye and thumb pressed down on, are not allowed to exercise their constitutional rights to make decisions concerning the care, custody, and control of their children, nor their familial right of association.

63. Plaintiffs would like to have additional children in the future, but they are afraid to do so as OKDHS's policies, procedures, and/or customs would require an investigation.

64. Plaintiffs would like to move on with their lives and raise their families, but they are afraid to make any major decisions because OKDHS's policies, procedures, and/or customs would require an investigation.

65. Plaintiffs would like to post family events on social media, but they are afraid and know, as history has shown, that OKDHS's policies, procedures, and/or customs would require an investigation.

66. Plaintiffs have been entirely deprived of any due process rights because OKDHS's policies, procedures, and/or customs do not afford an adequate appeals process whereby a neutral arbitrator reviews and considers evidence, argument, and/or testimony.

## VIOLATION OF THE FOURTH AMENDMENT

67. Plaintiffs incorporate the preceding paragraphs as if realleged.

68. The Fourth Amendment to the United States Constitution provides that the government shall not violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. The strictures of the Fourth Amendment apply to child welfare workers, social workers, as well as all other governmental employees.

69. Unreasonable seizures without probable cause violate Fourth Amendment, subject only to a few specifically established and well-delineated exceptions which are not implicated by the facts here, and the use of any force applied without reasonable suspicion or probable cause constitutes excessive force that transgresses the bounds of the Fourth Amendment.

70. The conduct of the Ridgeway, Doe 1, and Doe 2 violated the constitutional rights of L.E.K. as secured by the Fourth Amendment to the United States Constitution, actionable through 42 U.S.C. § 1983, for which the Ridgeway, Doe 1, and Doe 2 are liable.

VIOLATION OF THE FOURTEENTH AMENDMENT

71. Plaintiffs incorporate the preceding paragraphs as if realleged.

72. The Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.

73. The Due Process Clause of the Fourteenth Amendment also protects the fundamental right of familial right of association with their children.

74. Philips, Ward, and Zimmerman intended, and continue to intend, to deprive the Plaintiffs of a protected relationship with their children.

75. Philips, Ward, and Zimmerman intruding into the familial relationship between Plaintiffs and their children was not warranted by the State's interests in the health and safety of the minor children.

76. Philips, Ward, and/or Zimmerman have effectively admitted in open court that their investigations and interviews and/or attempted interviews have no good and lawful cause. They are not connected to any actual, present threat or potential threat to the children.

77. Philips, Ward, and/or Zimmerman have stated or responded to questioning to the effect that even if 40 years passed without incident, and Cody Ray King had a child in his old age, they have pre-determined that they will harass Cody King and the mothers of his children in the future.

78. 74. Philips, Ward, and Zimmerman actions are not part of a current investigation. And with its threats of future investigations—without any knowledge of any future referrals—shows that they are not investigating pursuant to Oklahoma Law.

79. Furthermore, the Oklahoma Children's Code does not give it the authority to harass citizens.

80. The surreptitious strip search, seizure, and interrogation of L.E.K. was not supported by any legitimate state interest.

81. The conduct of Ridgeway, Doe 1, and Doe 2 imposed an undue burden on the Plaintiff's associational rights in violation of the Due Process Clause for which Ridgeway, Doe 1, and Doe 2 are liable.

82. The continuous harassment and attempt to interrogate the minor children—based solely on a Facebook post of a marriage, is not supported by any legitimate state interest.

83. The conduct of Philips and Ward and Zimmerman has imposed an undue burden on the Plaintiff's associational rights in violation of the Due Process Clause for which Defendants are liable.

84. OKDHS, and its supervisors, have failed to supervise and failed to train the employees under their control and thereby violated 42 U.S.C. § 1983 by violation of the Plaintiffs' constitutional

rights under color of law, under the Fourteenth Amendments to the U.S. Constitution and the Oklahoma Constitution.

VIOLATIONS OF THE OKLAHOMA CONSTITUTION
ARTICLE 2, SECTION 30
UNREASONABLE SEIZURE / EXCESSIVE FORCE

85.Plaintiffs incorporate the preceding paragraphs as if realleged.

86.Article 2 Section 30 of the Oklahoma Constitution protects the right of the people like L.E.K. to be secure in their persons, houses, papers, and effects against unreasonable searches or seizures.

87.The rights embodied within Article 2 Section 30 provide a remedy to victims of unreasonable seizures or excessive force against the state and its political subdivisions separate and independent from the remedies embodied within the Oklahoma Governmental Tort Claims Act ("OGCTA").

88.The conduct of the Ridgeway, Doe 1, and Doe 2 violated the rights of L.E.K.. as secured by Article 2, Section 30 of the Oklahoma Constitution for which their employers are liable under a theory of respondeat superior

ARTICLE 2, SECTION 7
DUE PROCESS

89.Plaintiffs incorporate the preceding paragraphs as if realleged.

90.Article 2, Section 7 of the Oklahoma Constitution protects the right of the people like Plaintiffs from the deprivation of liberty without due process of law, to include the unlawful targeting and interference with the familial relationship.

91.The rights embodied within Article 2 Section 7 provide a remedy to victims deprived of procedural and substantive due process against the state and its political subdivisions separate and independent from the remedies embodied within the OGCTA.

92. The conduct of Defendants Ridgeway, Doe 1, and Doe 2 violated the rights of L.E.K. as secured by Article 2, Section 7 of the Oklahoma Constitution for which their employers are liable under a theory of respondeat superior.

93. The conduct of Defendants Philips, Ward, and Zimmerman violated the rights of Plaintiffs as secured by Article 2, Section 7 of the Oklahoma Constitution for which their employers are liable under a theory of respondeat superior.

## VIOLATIONS OF THE OKLAHOMA GOVERNMENTAL TORT CLAIMS ACT
## 51 O.S. § 151 ET SEQ.

94. Plaintiffs incorporate the preceding paragraphs as if realleged.

95. OKDHS is liable for any loss resulting from their torts or the torts of their employees acting within the scope of their employment subject to the limitations and exceptions specified in The Governmental Tort Claims Act ("OGTCA") and where OKDHS, if a private person or entity, would be liable for money damages under Oklahoma law.

96. The exemptions set forth in the OGTCA do not apply to the facts and circumstances set forth in this Complaint.

97. This action is brought consistent with the claim presentation process set forth in the OGTCA.

### A. NEGLIGENCE

98. Plaintiffs incorporate the preceding paragraphs as if realleged.

99. OKDHS owed a duty of reasonable care to ensure that minor children are not removed from the custodial care in violation of the law or without proper legal authority. OKDHS breached that duty by removing or allowing the removal of L.E.K. from the custodial care of his classroom without proper legal authority, which is the direct and proximate cause of damages sustained by L.E.K.

### B. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100. Plaintiffs incorporate the preceding paragraphs as if realleged.

101. OKDHS is liable for the Intentional Infliction of Emotional Distress caused to Plaintiffs.

102. The actions of Doe 1 to strip search L.E.K while in a school bathroom, and against his will, was extreme, outrageous, atrocious, and utterly intolerable in a civilized society. Doe 1 intentionally and/or recklessly caused L.E.K. sever emotional distress, beyond which a reasonable person could be expected to endure.

103. The actions of Philips, Ward, and Zimmerman in their continuous harassment of Plaintiffs, and intolerable violations of Plaintiff's constitutional rights, is extreme, outrageous, atrocious, and utterly intolerable in a civilized society. Through their actions and statements, they have intentionally and/or recklessly caused Plaintiffs sever emotional distress, beyond which a reasonable person could be expected to endure.

### C. LIBEL AND SLANDER

104. Plaintiffs incorporate the preceding paragraphs as if realleged.

105. Upon information and belief, Philips, Ward, and Zimmerman libeled and slandered Plaintiffs by publishing or causing to be published false information in spoken and/or written form.

### D. FALSE LIGHT INVASION OF PRIVACY

106. Plaintiffs incorporate the preceding paragraphs as if realleged.

107. Philips, Ward, and Zimmerman invaded Plaintiffs' privacy by portraying them in a false light.

### V. RELIEF REQUESTED

108. Based upon the facts set forth above, Plaintiffs respectfully requests the following relief:

A. An injunction against OKDHS in implementing its policies, procedures, and customs that violate the U.S. Constitution.

B. An award of compensatory damages against all Defendants for all claims;

C. An award of punitive damages pursuant to 42 U.S.C. § 1988 against Defendants Ridgeway, Doe 1, Doe 2, Philips, Ward, and Zimmerman;

D. An award of punitive damages under state law against OKDHS and OSBI for the actions of their employees Ridgeway, Doe 1, Doe 2, Philips, Ward, and Zimmerman;

E. An award of attorney's fees and costs; and

F. Any and all other relief as the law and equity may support.

WHEREFORE, all premises considered, Plaintiff respectfully requests judgment against these Defendants in an amount in excess of $75,000.00.

Respectfully submitted,

s/ Alan M. Taylor
Alan M. Taylor, OBA #34351
William Blocker, OBA #34377
PALMER LAW
1609 Arlington
Ada, OK 74820
(405) 885-0890
blocker@callpalmer.com
taylor@callpalmer.com
ATTORNEYS FOR PLAINTIFFS

JURY TRIAL DEMANDED
ATTORNEY LEIN CLAIMED